IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
|     Plaintiff, | § |
| vs. | § Cv. No. 04-02883-JDB-dkv |
|  | § Cr. No. 01-20209-JSG |
| LAGRONE SHIELDS, | § |
|     Defendant. | § |

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Defendant Lagrone Shields, Bureau of Prisons inmate registration number 18100-076, an inmate at the Federal Correctional Institution in Forrest City, Arkansas, has filed a pro se motion pursuant to 28 U.S.C. § 2255. On January 27, 2006, the Court ordered a response from the United States. On April 14, 2006, the government submitted its response. For the reasons stated below, Defendant's motion is DENIED without the need for an evidentiary hearing.

**I.   BACKGROUND**

On August 14, 2001, a federal grand jury in the Western District of Tennessee returned a three-count indictment charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (count one), one count of possession of cocaine base with intent to distribute, in

violation of 18 U.S.C. § 841(a)(1) (count two), and one count of possessing a firearm in connection with a drug offense, in violation of 18 U.S.C. § 924(c) (count three). On April 3, 2002, Defendant entered a plea of guilty to counts one and two of the indictment. On September 20, 2002, this Court, the Honorable Julia Smith Gibbons presiding, sentenced Defendant to 200 months' incarceration, four years of supervised release, and a $200.00 special assessment. Judgment was entered on September 23, 2002. Defendant timely appealed to the Sixth Circuit Court of Appeals, challenging the Court's refusal to grant his motion for a downward departure from his guideline sentencing range. On August 4, 2003, the Sixth Circuit issued an order affirming Defendant's conviction and sentence. Defendant did not petition the Supreme Court for certiorari review.

**II.  CLAIMS**

Defendant filed the instant motion on November 2, 2004, although it was signed, under penalty of perjury, on October 28, 2004.[1] In the motion, Defendant claims that he received the ineffective assistance of counsel prior to entering his plea because counsel 1) allegedly told him that the amount of cocaine base he was charged with possessing rendered him ineligible for a jury charge on simple possession as a lesser-included offense of possession with

---

[1] A § 2255 movant's signing of the motion and delivery to prison officials for mailing is the earliest point at which the motion can be deemed "filed" for purposes of the one-year limitations period. Houston v. Lack, 487 U.S. 266, 270-71 (1988). See also Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999)(applying Houston and concluding that, because motion to vacate was signed under penalty of perjury on the day before the expiration of the limitations period, it was likely delivered to prison officials for mailing before the deadline).

intent to distribute and 2) failed to object to the Court's purported failure to advise Defendant of the minimum and maximum sentences applicable to the counts to which he was pleading guilty. Defendant also claims that "the district court judge erred in reaching his decision to add 2 points to petitioner['s] base offense level pursuant to § 4A1.1(a) of the USSG because of his prior drug conviction." Defendant's Motion, doc. no. 1 at fifth unnumbered page.

The government contends that Defendant is not entitled to relief under 28 U.S.C. § 2255. The government argues that Defendant's motion is untimely, that it does not satisfy the restrictions applicable to a second or successive motion to vacate sentence, that Defendant's ineffective assistance claims lack merit, and that Defendant's claim about judicial sentencing error has been procedurally defaulted in collateral review under § 2255.

### III. ANALYSIS

#### A. Procedural Issues

The government asserts procedural defenses to both the cognizability of Defendant's motion and to a discrete claim within the motion. The government first contends that Defendant's motion is untimely under § 2255's one-year limitations period because the Sixth Circuit affirmed his conviction and sentence on August 4, 2003, and "[a]lmost sixteen months later, Shields filed the instant motion." Response to Applicant's Motion For Relief Under 28 U.S.C. § 2255 ("Response"), doc. no. 8 at 3. While the government accurately states that the timeliness of Defendant's motion depends

on when his conviction became final, its assessment of finality in this case is incorrect.  "When a federal criminal defendant takes a direct appeal to the court of appeals, his judgment of conviction becomes final for § 2255 purposes upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." Sanchez-Castellano v. United States, 358 F.3d 424, 426 (6th Cir. 2004).  Here, Defendant's conviction and sentence were affirmed on August 4, 2003.  Because Defendant had ninety days from that date to file a petition for certiorari with the Supreme Court, Defendant's conviction did not become final until, at the earliest, November 3, 2003.[2]  Thus, Defendant had until November 2, 2004, to file his § 2255 motion.  Because, as discussed supra, n. 1, Defendant should be credited with having filed his motion on October 28, 2004, the motion appears to be timely.

The government also contends that, "if this motion is somehow construed as a 'second or successive' petition for relief under § 2255, such relief would also be barred" because the motion does not satisfy the gate keeping requirements of 28 U.S.C. § 2244. Response at 3.  While the government's recitation of the restrictions on second or successive motions under § 2255 is correct, such concerns are inapplicable in this case.  The instant motion is Defendant's first, and thus far only, motion pursuant to § 2255.

---

[2]  The ninetieth day following the Sixth Circuit's decision affirming Defendant's conviction and sentence fell on Sunday, November 2, 2003.  Thus, Defendant would have been allowed to file his petition on the first business day following November 2, 2003.

The government argues that Defendant's third claim, alleging sentencing error by the Court for adding "2 points to petitioner['s] base offense level" where the particular "enhancement" "was not alleged in his grand jury indictment on his drug charge or gun charge," is procedurally defaulted because, as a claim of judicial sentencing error, it was not raised on direct appeal. To the extent that Defendant's claim should be construed only as an allegation of error by the Court at sentencing, the government's assertion of procedural default is merited. However, because Defendant has asserted ineffective assistance of counsel as the only substantive ground for relief in his motion, the Court interprets this claim as a separate allegation of ineffective assistance based on counsel's failure to object to the alleged error. Thus, the Court will consider this claim in its disposition of Defendant's ineffective assistance claims.

**B.   Merits of Defendant's Claims**

    **1.   Standards Applicable to Ineffective Assistance Claims**

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984):[3]

---

    [3] Although <u>Strickland</u> addressed a habeas petitioner's attack on his state-court conviction and death sentence, the test for ineffectiveness articulated by the Court also applies to collateral attacks on noncapital sentences. <u>See</u> <u>Glover v. United States</u>, 531 U.S. 198, 202-03 (2001)(reversing Seventh Circuit's determination that counsel's error, resulting in a sentence of an additional six to twenty-one months in prison, failed to satisfy the prejudice prong of <u>Strickland</u>); <u>Arredondo v. United States</u>, 178 F.3d 778, 783 (6th Cir. 1999)(explaining, prior to <u>Glover</u>, that "[a]lthough the Supreme Court has never
(continued...)

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999)("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as

---

[3] (...continued)
expressly extended the *Strickland* standard to noncapital sentencing, we have applied it in that context.").

what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983)("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'")(citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

7

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

In the context of a guilty plea, in order to demonstrate prejudice flowing from counsel's deficient performance, a petitioner must show that "there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

    **2.**    **Application**

        **a.**    **Advice on "Personal Use"**

Shields first contends that counsel was ineffective for advising him that the quantity of cocaine base he was charged with possessing precluded him from asserting that the drugs were for his personal use rather than distribution. He has failed to demonstrate either deficient performance or prejudice. Defendant's assertion, in his motion, that he intended to share the cocaine base with his friends and their girlfriends does not, even if true, establish that the drugs were not for distribution. See United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994)("Sharing drugs with

8

another constitutes 'distribution' under § 841(a)(1)."). See also United States v. Layne, 192 F.3d 556, 569 (6th Cir. 1999)(adopting Washington in relevant part).  Had Defendant's stated intent to share the drugs at issue in the indictment come to fruition, such an act still qualifies as a distribution under § 841(a)(1).  Thus, Shields cannot show deficient performance or prejudice based on counsel's purported advice concerning the merit of his "personal use" defense to the distribution count of the indictment.  Accordingly, this allegation of ineffective assistance is DENIED.

        **b.    Failure to Object to the Court's Alleged Failure to Inform Defendant of Minimum and Maximum Penalties**

Defendant claims that he was

> denied effective assistance of counsel by his attorney at his guilty plea trial because she intentionally failed to object to the district court judge failing to advise petitioner of the mandatory minimum and maximum sentence that he could receive on his gun charge and drug charge, before [s]he accepted petitioner['s] guilty plea on the charges.

Defendant's Motion, doc. no. 1 at fourth unnumbered page. Defendant's contention that he was not advised of the minimum and maximum penalties applicable to the charges in the indictment is clearly refuted by the record.  The Court accepted Defendant's guilty plea only after conducting a Rule 11 colloquy during which the Court ascertained that Defendant was entering an informed and voluntary plea.  Moreover, because the indictment sets forth the minimum and maximum penalties applicable to each count and the plea agreement recounts that Defendant entered his plea with an understanding of the "maximum penalty provided by law," Defendant

cannot establish prejudice even if the Court did fail to apprize him of the applicable minimum and maximum penalties during the plea colloquy. Finally, assuming that the Court erred as alleged, Defendant has not even suggested that he would not have pleaded guilty but for counsel's failure to object to the alleged error. Thus, Defendant has not established deficient performance or prejudice. Accordingly, this allegation of ineffective assistance is DENIED.

### c. Failure to Object to Alleged "Enhancement"

Shields also contends that the "district court erred in reaching h[er] decision to add 2 points to petitioner['s] base offense level pursuant to 4A1.1(a) of the USSG because of his prior drug conviction . . . since section 4A1.1(a) of the USSG was not alleged in his grand jury indictment on his drug charge or gun charge." Defendant's Motion at fifth unnumbered page. As discussed above, the Court construes this claim as an allegation of ineffectiveness based on counsel's failure to object to the purported error. Defendant has not demonstrated deficient performance or prejudice. To the extent that Defendant alleges error based on the Court's "enhancement" of his criminal history score because he committed the instant offense less than two years after his release from imprisonment on prior state convictions, <u>see</u> U.S.S.G. § 4A1.1(e), the claim is clearly devoid of merit. First, Shields does not specify how § 4A1.1(e) was erroneously applied at sentencing. Second, if Defendant intends to raise a Sixth Amendment claim respecting the "enhancement" because § 4A1.1(e) was not

10

charged in his indictment or admitted by him, such a claim is unavailing. The Sixth Amendment does not preclude a sentencing judge from finding facts related to a prior conviction in order to "enhance" a sentence beyond that which could be imposed based on the facts set forth in the indictment and admitted by the defendant or proven to a jury. Almendarez-Torres v. United States, 523 U.S. 224 (1998). Thus, there is no requirement that the government allege Defendant's criminal history, or the effect that history might have on his criminal history score, in the indictment. See United States v. Gatewood, 230 F.3d 186, 192 (6th Cir. 2000). See also United States v. McGhee, 161 Fed.Appx. 441, 450 (6th Cir. 2005)(denying, under Almendarez-Torres, claim that "enhancement" of criminal history score pursuant to § 4A1.1(d) violated the Sixth Amendment). Counsel was not deficient in failing to object to the "enhancement" of Defendant's criminal history score at sentencing. Accordingly, this claim of ineffectiveness is DENIED.

The motion, together with the government's response and the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Section 2255 Rules. Therefore, the Court finds that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and, therefore, his motion pursuant to § 2255 is DENIED.

**IV. APPELLATE ISSUES**

Consideration must also be given to issues that may arise if Defendant files a notice of appeal.  Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA).  No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"  Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed.  Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief.  The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail.  It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief.  After all, when a COA is sought, the

> whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[4]

In this case, Defendant's claims are clearly without merit for the reasons previously stated. Because he cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by

---

[4] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

13

28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952.[5]  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, the prisoner must file his motion to proceed <u>in forma pauperis</u> in the appellate court.  <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED.  Accordingly, if Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed <u>in forma pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 29th day of June, 2007.

> s/ J. DANIEL BREEN
> UNITED STATES DISTRICT JUDGE

---

[5] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.